UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| WILLIAM R. SHERMAN, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 5:18-cv-00589-MHH |
| } | |
| ANA FRANKLIN, } | |
| } | |
| Defendant. } | |

## MEMORANDUM OPINION AND ORDER

Defendant Ana Franklin formerly served as the sheriff of Morgan County, Alabama. Plaintiff William R. Sherman worked as a deputy sheriff. Mr. Sherman alleges that Sheriff Franklin constructively discharged him in violation of his First Amendment right to free speech. Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Sheriff Franklin asks the Court to dismiss Mr. Sherman's claim against her. Sheriff Franklin contends that Mr. Sherman cannot state a claim for constructive discharge, and she argues that she is entitled to qualified immunity. (Doc. 5, p. 2; Doc. 13, pp. 1-2). The Court addresses these arguments in turn.

### I.  STANDARD OF REVIEW

Rule 12(b)(6) enables a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Pursuant to Rule 8(a)(2), a complaint must contain, "a short and plain

1

statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Generally, to survive a Rule 12(b)(6) motion to dismiss and meet the requirement of Fed. R. Civ. P. 8(a)(2), "a complaint does not need detailed factual allegations, but the allegations must be enough to raise a right to relief above the speculative level." *Speaker v. U.S. Dep't of Health & Human Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). In deciding a Rule 12(b)(6) motion to dismiss, a district court must view the allegations in a complaint in the light most favorable to the non-moving party. *Sun Life Assurance Co. v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1207 (11th Cir. 2018). A district court must accept well-pled facts as true. *Little v. CRSA*, 744 Fed. Appx. 679, 681 (11th Cir. 2018).

## II. FACTUAL BACKGROUND

Mr. Sherman worked as a deputy sheriff in Morgan County from 2008 to 2016. (Doc. 1, ¶ 3). In 2015, Mr. Sherman complained to Sheriff Franklin and Ron Livingston, a captain with the Morgan County Sheriff's Department, about wage issues. (Doc. 1, ¶¶ 6-8). In reaction to Mr. Sherman's complaints about

wages, Captain Livingston told Sheriff Franklin that Mr. Sherman was providing information to the "Morgan County Whistleblower" blog, a blog concerning alleged public corruption. (Doc. 1, ¶ 9).[1] That was not true; Deputy Sherman was not supplying information to the blog, but Sheriff Franklin believed Captain Livingston. (Doc. 1, ¶¶ 9-10).

After receiving Captain Livingston's report, Sheriff Franklin looked for grounds to terminate Mr. Sherman's employment. (Doc. 1, ¶ 10). She asked Morgan County Sheriff's Department employees to "find out what we have or can come up with on Sherman." (Doc. 1, ¶ 12). The effort was unproductive, so Sheriff Franklin told Deputy Sherman that if he did not resign from the Sheriff's Office, the office would stop funding his legal defense in a separate action. (Doc. 1, ¶ 13). Believing Sheriff Franklin's threat credible, Mr. Sherman resigned. (Doc. 1, ¶ 13).

Pursuant to § 1983, Mr. Sherman asserts a claim against Sheriff Franklin in her individual capacity for her violation "of his freedom of speech as guaranteed by the First Amendment of the United States Constitution." (Doc. 1, ¶¶ 2, 18). Mr. Sherman alleges that his constructive discharge was motivated by Sheriff

---

[1] The Court takes judicial notice of the records of this Court which reflect two other lawsuits against Sheriff Franklin concerning the Morgan County Whistleblower blog. *Lockhart et al. v. Franklin et al.*, No. 5:16-cv-1699-MHH. *Bradley v. Franklin et al.*, 5:18-cv-01085-MHH; FED. R. EVID. 20 (explaining judicial notice). Glenda Lockhart, a resident of Morgan County, began writing the blog to report on what Ms. Lockhart perceived as corruption in the Morgan County Sheriff's Office.

Franklin's erroneous belief that he engaged in speech critical of her and the Morgan County Sheriff's Department. (Doc. 1, pp. 4-6). According to Mr. Sherman, Sheriff Franklin "ensured that [he] was blackballed by the law enforcement community in and around Morgan County, Alabama," and he "has since been unable to obtain new employment in law enforcement." (Doc. 1, ¶ 15).

### III. DISCUSSION

The First Amendment limits the situations in which government officials may dismiss or demote an employee when an employee engages in protected speech. *Heffernan v. City of Paterson, N.J.*, 136 S.Ct. 1412, 1416 (2016); *Carter v. City of Melbourne, Fla.*, 731 F.3d 1161, 1168 (11th Cir. 2013). A district court evaluates First Amendment retaliation claims using a four-part test. *Moss v. City of Pembroke Pines*, 782 F.3d 613, 617-18 (11th Cir. 2015). The district court first considers "whether Plaintiff's speech was made as a citizen and whether it implicated 'a matter of public concern.'" *Moss*, 782 F.3d at 618 (quoting *Rankin v. McPherson*, 438 U.S. 378, 384 (1987)). If the plaintiff spoke as a citizen about a matter of public concern, then the court must "weigh Plaintiff's First Amendment interests against the City's interest in regulating his speech to promote 'the efficiency of the public services it performs through its employees.'" *Moss*, 782 F.3d at 618 (quoting *Pickering v. Bd. of Educ. of Twp. High Sch. Dist.*, 391 U.S. 563 (1968)). If the plaintiff's First Amendment interest prevails, then the plaintiff

must show that the protected speech "was a substantial motivating factor" in an adverse employment action. *Moss*, 782 F.3d at 618. If the plaintiff satisfies the first three parts of the test, then at the final step of the analysis, the burden shifts to the defendant to show that the defendant would have terminated the plaintiff even in the absence of the protected speech. *Moss*, 782 F.3d at 618.

### A. Perceived Speech

Initially, Sheriff Franklin took the position that Mr. Sherman's claim was invalid because he did not engage in actionable speech. Sheriff Franklin argued that a First Amendment claim could not rest on perceived as opposed to actual speech. (Doc. 5, pp. 2-6). After counsel for Mr. Sherman brought to the attention of counsel for Sheriff Franklin the United States Supreme Court's decision in *Heffernan*, Sheriff Franklin abandoned her argument. (Doc. 13, p. 1 ("*Heffernan* nevertheless suggests that the First Amendment protects perceived speech.")). A plaintiff may premise a First Amendment claim on perceived speech.

### B. Constructive Discharge

"[W]hen an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job," the employee suffers a constructive discharge. *Bryant v. Jones*, 575 F.3d 1281, 1298 (11th Cir. 2009). To establish an adverse employment action based on a constructive discharge theory, a plaintiff must show that "the work environment and conditions of employment

were so unbearable that a reasonable person in that person's position would be compelled to resign." *Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1363 (11th Cir. 1994). The plaintiff's work conditions must be more severe or pervasive than the conditions that will support a hostile work environment claim. *Bryant*, 575 F.3d at 1298-99. In addition, "[a] constructive discharge will generally not be found if the employer is not given sufficient time to remedy the situation." *Kilgore v. Thompson & Brock Mgmt., Inc.*, 93 F.3d 752, 754 (11th Cir. 1996).

Mr. Sherman alleges that when Sheriff Franklin was unable to identify grounds for terminating him for his perceived speech, she gave him an ultimatum. She told him that if he did not resign, the Sheriff's Department no longer would fund his defense or provide indemnity in a § 1983 action pending against him in federal court. Given the Hobson's choice, Mr. Sherman resigned. (Doc. 1, ¶¶ 12-13). These allegations, taken as true at this stage of the litigation, demonstrate that Sheriff Franklin intended to make Mr. Sherman's working conditions so intolerable that he would be forced to resign. Therefore, Mr. Sherman has adequately alleged a constructive discharge.[2]

---

[2] The constructive discharge opinions that Sheriff Franklin cites in support of her motion to dismiss all were decided on evidentiary records, not on motions to dismiss. *See e.g. Bryant*, 575 F.3d at 1298 (finding that employees satisfied the elements of a constructive discharge claim at the summary judgment stage); *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir. 2001) (jury verdicts in favor of plaintiffs reversed because plaintiffs presented insufficient evidence of constructive discharge); *Garner v. Wal-Mart Stores, Inc.*, 807 F.2d 1536, 1539 (11th Cir. 1987) (discussing the district court's finding of facts); *Jones v. Allstate Ins. Co.*, 707 Fed. Appx. 641, 646 (11th Cir. 2017) (summary judgment).

### C. Qualified Immunity

"Qualified or 'good faith' immunity is an affirmative defense that must be pleaded by a defendant official." *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). The affirmative defense "protects government officials performing discretionary functions from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996) (citing *Harlow*, 457 U.S. at 817-19). Qualified immunity is premised on the presumption that "a reasonably competent public official should know the law governing his conduct." *Harlow*, 457 U.S. at 819.

Because "qualified immunity is a privilege that provides an immunity from suit rather than a mere defense to liability," a district court must "resolve immunity questions at the earliest possible stage in litigation." *Case v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir. 2009) (internal citations, quotations, and emphasis omitted); *see also Crawford v. Carroll*, 529 F.3d 961, 978 (11th Cir. 2008) ("'The Supreme Court has urged us to apply the affirmative defense of qualified immunity at the earliest possible stage in litigation because the defense is immunity from suit and not from damages only.'") (citation omitted).

To establish the defense, a defendant must demonstrate that she "was acting within the scope of [her] discretionary authority." *Case*, 555 F.3d at 1325. Once that showing is made, "[t]he burden then shifts to the plaintiff to overcome the defense of qualified immunity." *Case*, 555 F.3d at 1325; *see also Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004) ("[T]he burden shifts to the plaintiff to show that the defendant is *not* entitled to qualified immunity") (emphasis in original). To carry this burden, the plaintiff must demonstrate that the defendant "'violated clearly established law based upon objective standards.'" *Gonzalez v. Lee Cty. Hous. Auth.*, 161 F.3d 1290, 1295 (11th Cir. 1998) (quoting *Evans v. Hightower*, 117 F.3d 1318, 1320 (11th Cir. 1997)). Thus, "[q]ualified immunity affords 'protection to all but the plainly incompetent or those who knowingly violate the law.'" *Crawford*, 529 F.3d at 978 (citation omitted).

### i. Discretionary Authority

In the qualified immunity context, a state actor may exercise "discretionary authority" when engaged in purely ministerial activities. *McCoy v. Webster*, 47 F.3d 404, 407 (11th Cir. 1995).

> Instead of focusing on whether the acts in question involved the exercise of actual discretion, we assess whether they are of a type that fell within the employee's job responsibilities. Our inquiry is two-fold. We ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize.

*Harland*, 370 F.3d at 1265-66. At this first stage of the immunity inquiry, a district court must determine only whether the conduct at issue was job-related; the court may not consider whether the conduct "may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Harland*, 370 F.3d at 1266.

Mr. Sherman contends that Sheriff's Department policy and procedures must "ensure defense and indemnity to employees like Sherman who are sued in their individual capacities under §1983," and he asserts that he "must through discovery determine the scope and extent of Franklin's discretionary authority to force his resignation in the manner in which she did." (Doc. 12, p. 12). Per *Harland*, at this initial stage of the immunity, Mr. Sherman's focus on the way is which Sheriff Franklin obtained his resignation is misplaced. The job function at issue is the hiring and firing of employees, and that administrative task is a discretionary function of a government official. *Lussier v. Dugger*, 904 F.2d 661, 672 (11th Cir. 1990) (Johnson, J. dissenting). Therefore, Sheriff Franklin has carried her initial burden of proving that her conduct relating to Mr. Sherman's resignation were discretionary acts for which she may seek qualified immunity.

### ii. Violation of a Clearly Established Constitutional Right

Because Sheriff Franklin can establish that she was engaged in a discretionary function when she allegedly looked for a way to terminate Mr. Sherman's employment as a deputy sheriff because of his perceived speech, the burden shifts to Mr. Sherman to show that Sheriff Franklin's actions violated clearly established constitutional law. A district court must consider whether, "[t]aken in the light most favorable to the party asserting the injury, [] the facts alleged show the officer's conduct violated a constitutional right" and whether "the right was clearly established … in light of the specific context of the case." *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001); *extended by Pearson v. Callahan*, 555 U.S. 223 (2009). Courts may exercise discretion "in deciding which prong of this inquiry to address first." *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009) (alteration in original) (quoting *Pearson*, 555 U.S. at 236).

Mr. Sherman alleges that Sheriff Franklin violated his First Amendment right to free speech. (Doc. 1, ¶ 18). "[A] public employee's right to freedom of speech is not absolute." *Bryson v. City of Waycross*, 888 F.2d 1562, 1565 (11th Cir. 1989).

> [T]he state has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general. The problem in any case is to arrive at a balance between the interests of the [employee] as a citizen, in commenting upon matters of public

concern and the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees.

*Bryson*, 888 F.2d at 1565 (quoting *Pickering*, 391 U.S. at 568).[3]

To balance these interests and demonstrate a violation of his First Amendment right to free speech, a public employee must show that the speech at issue related to a matter of public concern, that his interests as a citizen outweighed the state's interests as an employer, and that the speech played a substantial role in motivating the government's decision to take an adverse employment action. *Akins v. Fulton Cty., Ga.*, 420 F.3d 1293, 1303 (11th Cir. 2005). The first two parts of the test—(1) whether the speech was made as a citizen implicating a matter of public concern and (2) whether the employee's interest in the speech has outweighed the state's interest in promoting efficient services—are questions of law for the Court to decide. *Bryson*, 888 F.2d at 1565.

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the

---

[3] In their briefs, the parties conflate the issue of whether a First Amendment case may rest on perceived speech with the actual right to free speech. In *Heffernan*, the Supreme Court held that a First Amendment claim could rest on perceived speech, and the Supreme Court explained that the constitutional right at issue in that case was the right to be free from an adverse employment action for supporting a political candidate. *Heffernan*, 136 S.Ct. at 1417 ("With a few exceptions, the Constitution prohibits a government employer from discharging or demoting an employee because the employee supports a particular political candidate."). After explaining that a First Amendment claim could be based on perceived speech, the Supreme Court remanded the *Heffernan* case to the lower courts to determine whether the state actors in that case had violated a constitutional standard and whether the standard was clearly established at the time of the employment action at issue in that First Amendment case. 136 S.Ct. at 1419.

Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). But a statement made "by a public employee outside the scope of his ordinary job duties is speech as a citizen for First Amendment purposes." *Lane v. Franks*, 573 U.S. 228, 238 (2014). Had Mr. Sherman contributed information to the Whistleblower Blog about public corruption in the Morgan County Sheriff's Department, the speech would have exceeded the scope of his ordinary job duties; Mr. Sherman was not a spokesperson or public relations officer for the Morgan County Sheriff's Department. (*See* Doc. 1, ¶ 3). Therefore, the speech that Captain Livingston reported to Sheriff Franklin was speech as a citizen.

>And it was perceived speech relating to a matter of public concern.
>
>Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.

*Snyder v. Phelps*, 526 U.S. 443, 453 (2011) (citations and internal quotation marks omitted). Had Mr. Sherman provided information to the Whistleblower Blog about public corruption in the Morgan County Sheriff's Department, that information would be a matter of concern for the community the department serves. *See Lane*, 573 U.S. at 228 ("The content of Lane's testimony—corruption in a public program and misuse of state funds—obviously involves a matter of significant

public concern."); *Garcetti*, 547 U.S. at 425 ("Exposing governmental inefficiency and misconduct is a matter of considerable significance."); *Fikes v. City of Daphne*, 79 F.3d 1079, 1084 (11th Cir. 1996) ("Certainly, the question of whether police officers are properly performing their duties, as a public safety issue, must be considered an issue of political or social concern."). Mr. Sherman sufficiently alleged that his perceived speech implicated a matter of public concern.

Because Mr. Sherman sufficiently alleged that he was speaking as a citizen and that his speech implicated a matter of public concern, the Court must balance Mr. Sherman's speech against the interests of the Sheriff's Department. *Carter*, 731 F.3d at 1168. Not all First Amendment interests demand the same level of protection, and "the state's burden in justifying a particular discharge varies depending upon the nature of the employee's expression." *Connick v. Myers*, 461 U.S. 138, 150 (1983). Important considerations include "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Rankin*, 483 U.S. at 388.[4]

---

[4] When actual speech is involved, the circumstances surrounding the speech may be relevant because "the employing agency's institutional efficiency may be threatened not only by the content of the employee's message but also by the manner, time, and place in which it is delivered." *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 415 n.4 (1979). When perceived speech is involved, the circumstances surrounding the speech may be less relevant. Here, there is no allegation that Captain Livingston shared with Sheriff Franklin the manner,

There is no doubt that reports of corruption within a law enforcement department may be disruptive, but Morgan County's interest in preventing speech about public corruption is low. *See Pickering*, 391 U.S. at 568. Speech about corruption may promote the Sheriff Department's interest in efficiency because the speech would bring alleged wrongful practices to light and allow the department to correct those practices and better serve the public. Therefore, viewing the factual allegations in the light most favorable to Mr. Sherman, his speech qualified for protection under *Pickering*, and Sheriff Franklin's alleged decision to find a way to terminate him because she believed he contributed to the blog concerning public corruption in the Morgan County Sheriff's Department would violate Mr. Sherman's constitutional right to free speech.

Thus, Sheriff Franklin is entitled to qualified immunity only if the law was not clearly established and did not put her on notice that her efforts to terminate Mr. Sherman violated his First Amendment rights. "A right is clearly established if, in light of already-existing law, the unlawfulness of the conduct is 'apparent.'" *Akins*, 420 F.3d at 1305 (citing *Anderson v. Creighton*, 482 U.S. 635, 640 (1987)). The plaintiff bears the burden of demonstrating that the defendant had fair warning that his conduct would violate clearly established federal law:

---

time, or place of Mr. Sherman's purported contributions to the Whistleblower blog. Therefore, the Court does not factor the nature of the communication into the analysis other than to note generally that a public department may have an interest in information that a public employee provides to an internet blog.

> To demonstrate that the law at the time clearly established that [the defendant's] conduct would violate the Constitution, [the plaintiff] might point to either (1) earlier case law from the Supreme Court, [the Eleventh Circuit Court of Appeals], or the highest court of the pertinent state that is materially similar to the current case and therefore provided clear notice of the violation or (2) general rules of law from a federal constitutional or statutory provision or earlier case law that applied with 'obvious clarity' to the circumstances, establishing clearly the unlawfulness of [the defendant's] conduct.

*Long v. Slaton*, 508 F.3d 576, 584 (11th Cir. 2007).

"[A] core concern of the first amendment is the protection of the 'whistle-blower' attempting to expose government corruption." *Bryson*, 888 F.2d at 1566-67. In *Akins v. Fulton County, Georgia*, the Eleventh Circuit Court of Appeals held that a defendant had "fair warning … that speech whose main thrust is to report bidding irregularities to a public official in a meeting requested for that purpose is protected by the First Amendment." *Akins*, 420 F.3d at 1308 (2005) (internal quotations omitted). Similarly, in *Walker v. Schwalbe*, a case in which a state employee who was terminated for participating in a state investigation of his supervisor's alleged misconduct, the Eleventh Circuit Court of Appeals held that, "[a]t the time the defendants acted in 1991, clearly established law informed reasonable government officials that [the plaintiff] could not be punished for his First Amendment speech." 112 F.3d 1127, 1133 (11th Cir. 1997).

Mr. Sherman alleges that Sheriff Franklin believed that he had exposed matters of corruption to the public. (Doc. 1, ¶ 9). As a result, he was

constructively discharged from his position at the Morgan County Sheriff's Department. (Doc. 1, ¶ 9). It is clearly established that a public employer may not fire an employee for reporting corruption. *See Carollo v. Boria*, 833 F.3d 1322 (11th Cir. 2016) (denying qualified immunity because when the city manager was terminated, purportedly for reporting city officials' alleged misconduct to law enforcement, reasonable public officials would have known it violated the First Amendment to terminate someone for speaking about matters of public concern involving corruption); *Cooper v. Smith*, 89 F.3d 761 (11th Cir. 1996) (denying qualified immunity because the law was clearly established that a public official would violate his employee's free speech rights by taking adverse action for employee's cooperation with law enforcement investigation as to corruption). Against the backdrop of this Circuit precedent and the Supreme Court's guidance in *Pickering*, a reasonable public official would know that she would violate Mr. Sherman's rights under the First Amendment if she forced him to resign because he spoke out about public corruption. Therefore, on the current state of the record, Mr. Sherman's First Amendment right to speech was clearly established at the time of his constructive discharge.

## IV. CONCLUSION

For the reasons explained above, the Court denies Sheriff Franklin's motion to dismiss Mr. Sherman's complaint. If she wishes, Sheriff Franklin may present her arguments again on a more developed evidentiary record.

**DONE** and **ORDERED** this January 28, 2019.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE